**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. :

ROGER KING

    Plaintiff,

v.

iHeartMedia, Inc., iHeart Communications, Inc., Clear Channel Communications, Inc, CC Media Holdings, Inc

    Defendants.

**COMPLAINT AND JURY DEMAND**

COMES NOW the Plaintiff, Roger King through his counsel Jessica V. Jackson, Attorney at Law of The Law Office of Jessica Jackson-Barrows, LLC and for a Complaint against the Defendant, does hereby allege, as follows:

**I.    JURISDICTION AND VENUE**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 (Federal Question Jurisdiction), 28 U.S.C. §1332 (Diversity Jurisdiction) and 28 U.S.C. §1343 (Civil Rights Jurisdiction).

2. This complaint is for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et. seq.* as amended by the ADA Amendments Act of 2008 ("ADA"), the Rehabilitation Act of 1973, 29 U.S.C. §701, *et. seq., ("Rehab Act"),* the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, *et. seq.*

3.     The Plaintiff is a 60-year-old male who currently resides in Castle Rock, Colorado.

4.     Subject discrimination against the Plaintiff occurred on September 10, 2018 when he informed his employer IHeartMedia by way of his manager/ program director Garner Goin that he had gone to Urologist and was waiting to find out if he had prostate cancer, as well as November of 2017 when he informed his employer that he would need to use his vacation to take care of his wife after she was an a life threatening collision subsequent to the effective date of the ADA Amendments Act of 2008 ("ADAAA") and the Plaintiff's ADA claims are therefore controlled by said Amendments.

5.     The Defendant, IHeart MEDIA is a corporation with an office located at 4695 S. Monaco Street, City and County of Denver Colorado, 80237.

6.     iHeart Communications, Inc is a corporation with its principal office located at 2100 McKinney Ave. #1500, Dallas, TX 75201 and is registered to do and doing business within the State of Colorado.

7.     Clear channel is a corporation with its principal office located at

8.     All three Defendants receive federal funds and are subject to compliance within the Rehabilitation Act.

9.     At all times pertinent hereto, one or all three of the Defendants was an "employer" and a "person" under 29 U.S.C. § 630(a),(b) & (h) and 42 U.S.C. § 2000e(b).

10.    Plaintiff has complied with all precedent conditions to the filing hereof.  Plaintiff timely filed charges of Discrimination on August 5, 2019 and on or about August 20, 2019 amended said charges to assert a timely charge disability and retaliation.  Thereafter the EEOC issued its Dismissal and Notice of Rights dated October 4, 2019.  Plaintiff received via U.S. Mail a Right

to Sue Notice on or about October 5, 2018, which was sent by the United States Department of Justice, Civil Rights Division.

11.     Plaintiff has thus exhausted all administrative prerequisites to filing this lawsuit.

12.     Venue is proper in this lawsuit pursuant to 28 U.S.C. §1391(b)(2).

## II.     GENERAL ALLEGATIONS

13.     Plaintiff hereby incorporates by reference all prior statements and allegations as if set full forth herein.

14.     At all times material to the litigation the Defendant is a mass media corporation, which has as one of its specialties, radio entertainment.

15.     At all times material to the litigation, the Defendant owned more than 440 radio stations.

16.     At all times material to the litigation, the Plaintiff worked for two of the Defendant owned radio stations, KRFX and KBPI as the Creative Services Director.

14.     The Plaintiff was originally hired by Jacor Broadcasting on December 2, 1996.  In 1998 Jacor was purchased by Clear Channel Communications.  In 2014 Clear Channel Communications, was subsidiary of CC Media Holdings when CC Media Holdings was re branded as iHeartMedia, Inc.

15.     The Defendant iHeartMedia, Inc., filed for Chapter 11 Bankruptcy on March 14, 2018.

16.     The Plaintiff's immediate supervisor, Gardner Goin terminated the Plaintiff on October 26, 2018.

17.     Garder Goin and the Plaintiff worked together as contemporaries for 15 years, he was then let go and years later re-hired as the Plaintiff's boss.

16. The Plaintiff began his career as "On Air Talent", he then went on as Images Consultant and for 22 years worked as the Creative Services Director for KRXF and KBPI. In this position he was the creative lead in handled imaging, marketing and branding for the radio stations and its clients. He planned advertising, oversaw the creative process and gave guidance to the creative people who worked under him. He approved all work created by his staff and worked directly with clients. As the Creative Services Director he created comedy "bits" to be used on air. The Plaintiff has also won awards for the work that he has produced. In addition to those duties, the Plaintiff was called upon to do special projects assigned to him specifically because of his knowledge, expertise and experience

17. In February of 2016 the Plaintiff received an excellent review by Joe Bevilacqua noting that the Plaintiff' performance was outstanding and significantly above requirements and that he exceeded expectations and in general exceeded criteria required for successful job performance. Mr. Bevilacqua went on to say that the plaintiff helped in every facet of creative production across all platforms; that the plaintiff increased the engagement with KRFX's digital products and embraced all the digital assets to grow their online presence.

18. In March of 2017 KRFX, one of the Plaintiff's radio stations won radio station of the year from the Colorado Broadcasters Association; best evening program; best regularly scheduled entertainment program, best commercial for advertiser; best station imaging campaign; best sales remote/live broadcast, best community service campaign; best station promotion/marketing campaign, and best PSA, all of which were products primarily of the Plaintiff's work.

19. On November 4, 2017 The Plaintiff 's wife was in a motorcycle accident. Her foot was crushed, and she required surgery. On November 6, 2017 the Plaintiff asked Mr. Goin if he could build a home studio and work part time to care for his wife. His request was denied.

20. On November 15th the Plaintiff's wife had the foot surgery. The Plaintiff asked once again if he could use 15 days of his vacation time to take care of his wife. He was told that he could request the time but there was no guarantee that he would get it as there was a major end of the year project and he was needed.

21. In December of 2017 the Plaintiff was informed that his role in the "big project" would be extensive. iHeartRadio Denver would be adding a country format (106.7 "The Bull") and switching frequencies for KBPI from 106.7 to 107.9, and then flipping 107.9 in Fort Collins and 107.9 in Colorado Springs to active rock so that KBPI would broadcast all up and down the front range. The Plaintiff was responsible for all imaging and promotions for the switch. This project was such and undertaking that the plaintiff was required to work weekends, overtime and leave then return to work twice per day.

22. While undertaking these duties the Plaintiff was caring for his ailing wife.

23. In January of 2018 the Plaintiff was performing the duties above and hosting a night show on 103.5 The Fox.

24. At the end of January 2018, the Plaintiff was told that he would not longer be hosting the night show on 103.5 and could focus on is official job duties.

20. In March of 2018 iHeartMedia filed Chapter 11 Bankruptcy.

21. Between March of 2018 and August of 2018, the Plaintiff began to pick up side jobs on other radio stations.

22. In August of 2018 the Plaintiff was once again asked to take on additional duties that when added to his official job duties required that he come in nights and weekends.

23. In September of 2018 he was made aware that these side jobs were for radio stations that were competitors.

23. On September 10, 2018 the Plaintiff was called in for a conference with Garner Goin, who informed the Plaintiff that he was in effect on a type of probation.

24. Mr. Goin informed the Plaintiff that part of the reason for the probation was that his voice was airing on a competitor's radio station and a violation of his employment.

25. The Plaintiff told Mr. Goin that this was the first time that he heard of this but that he would not make any additional "bits".

24. During the course of the conversation Mr. Goin told the Plaintiff that he understood that the plaintiff over performed his duties and that the quality of his work was amazing.

25. During the course of the conversation the Plaintiff informed Mr. Goin that he was waiting for medical results that would in effect inform him of whether or not he had prostate cancer.

26. At one point during the conversation Mr. Goin told the Plaintiff that he understood that the company had been using his as a "garbage disposal" regarding plugging holes where needed on the work front.

27. On September 13, 2019, the Plaintiff gave Mr. Goin the contact information of the person who controlling the bits that were airing on the competing station.

28. Mr. Goin and Robert allen, the person in charge of the bits running at the competiting station 93.7 The rock, agreed that the Rock could air the bits for 30 days, and the contract would end and no more bits with the plaintiffs voice would air on the competetors station.

25.     On October 26, 2019 the Plaintiff was terminated.

26.     The Plaintiff was told by Mr. Goin that there were three reasons that he was terminated: there were bits that were still air on another ratio station; that he loaded the wrong key words for the national contest on KBPI and the last reason, Mr. Goin refused to discuss with the Plaintiff.

### III.     CLAIMS

#### i.     FIRST CLAIM FOR RELIEF
(DISABILITY DISCRIMINATION IN VIOLATION OF THE ADAAA, THE REHABILITATION ACT)

54.     Plaintiff incorporates by this reference all preceding paragraphs as though fully set forth herein.

55.     As fully set forth herein, Plaintiff was qualified for his position.  In addition, Plaintiff was able to perform the essential functions of his position with or without an accommodation.

56.     The Plaintiff, though he believed that he might have cancer, was working and was prepared to work.  Defendants, their agents and employees denied Plaintiff's statutory rights under the ADA/ADAAA, Rehab Act.

57.     In addition, the Plaintiff's wife was injured in a motorcycle collision and the Plaintiff requested time off to take care of her and he was denied.

57.     The Defendants' claim that the Plaintiff's voice was still airing on another station and that he loaded the wrong key words for the nation contes on KBPI were pretext and not supported by fact, resulting in the wrongful pretextual termination of Plaintiff in further retaliation for the assertion his rights under such laws.

58.     As a direct and proximate result of the acts and omissions described herein, Plaintiff has suffered and incurred, or may be reasonably expected to suffer or incur, the following damages and other losses, including but not limited to: lost income or employment compensation and

fringe benefits, thereby justifying appropriate awards to Plaintiff of front pay and back pay; damage to reputation and character, credit rating or creditworthiness, emotional or mental anguish, distress, upset, humiliation, embarrassment, or degradation, pain and suffering; and other consequential, incidental, or related damages to Plaintiff's employment rights privileges, interests, as well as statutory interest, and reasonable attorney's fees and cost incurred in connection herewith.

## ii. SECOND CLAIM FOR RELIEF
(RETALITATION IN VIOLATION OF THE DISABILITY DISCRIMINATION IN VIOLATION OF ADAAA, THE REHABILITATION ACT)

58. Plaintiff incorporates by this reference all preceding paragraphs as though fully set forth herein.

59. The Plaintiff's informing of management that he might have prostate cancer and the fact That he requested leave to take care of his ailing wife and was denied demonstrates the denial of plaintiff's reasonable requests for accommodation.

60. These requests for accommodation are protected by the ADAAA and the Rehabilitation Act.

61. The Defendant's refusals to engage in the interactive process, not allowing him the time off of which he had, and termination of his employment are all adverse actions.

62. The Defendant's decision to terminate the Plaintiff after informing the Defendant of his health status demonstrated a denial of reasonable request for an accommodation.

62. As a direct and proximate result of Defendants' willful or reckless discriminatory acts and conduct, Plaintiffs suffered and will continue to suffer lost wages and benefits, emotional distress, and other damages and losses otherwise described herein.

### iii. THIRD CLAIM FOR RELIEF

(DISCRIMINATORY DISCHARGE IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT)

59. Plaintiff hereby incorporates by reference all other statements and allegations of this Complaint, as if fully set forth herein.

60. At all times relevant, Plaintiff was an "employee" of the Defendants and protected person within the meaning of 29 U.S.C. §§630(f) and 631(a).

61. On or about October 26, 2018 the Plaintiff was told that he was fired because his voice continued to air on another radio station. This was pretextual based on the fact that Mr. Goin had made arrangements with the competitor radio station to end the airing of the bits and told the Plaintiff that his job was not in danger.

63. Mr. Goin told the Plaintiff that his job was secure.

62. The Plaintiff was well qualified for his position and was considered an exceptional employee.

63. The employee who replaced the Plaintiff was both younger and had less experience and was paid much less.

64. Another employee, close to the Plaintiff's age was terminated around the same time.

65. As a direct and proximate result of the Defendants' willful discriminatory acts and conduct, Plaintiff suffered and/or continues to suffer lost wages and benefits, emotional distress and other damages and losses otherwise described herein.

66. Defendants' acts and conduct in violating the Age Discrimination in Employment act were willful and or committed with reckless disregard for Plaintiffs' protected rights.

67. As a direct and proximate result of Defendants' willful or reckless discriminatory acts and conduct, Plaintiffs suffered and will continue to suffer lost wages and benefits, emotional distress, and other damages and losses otherwise described herein.

## VIII.   PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray that this Court assume jurisdiction and enter judgment in their favor and against the Defendants, and award all relief allowed by law, including but not limited to the following

a) Equitable relief, including back pay, future wages, pension and other benefits pursuant to 29 U.S.C. §§ 216(b) and 626(b); 29 U.S.C. §2617; 42 U.S.C. §§ 1981 and/or 2000e-5(g), as established at trial;

b) Lost wages and benefits and other past and future economic losses as provided by law, in amounts to be established at trial;

c) Compensatory damages including, but not limited to past and future non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses in the maximum amount permitted by 29 U.S.C. §§216(b) and 626(b), and 42 U.S.C. 1981 a(b) and 2000e-5(g), and other applicable law, in amounts to be established at trial;

d) Liquidated damages in an amount to be determined at trial pursuant to 29 U.S.C. §§216(b) and 626(b), 29 U.S.C. §2617;

e) Punitive damages pursuant to 42 U.S.C. 1981 a, other applicable law;

f) Reasonable attorney's fees and costs of suit, as permitted by 29 U.S.C. §§216(b) and 626(b), and 42 U.S.C. 2000e-5(k), 42 U.S.C.§1988 (b) & (c) and other applicable law:

g) Pre-judgment and post-judgment interest at the highest lawful rate;

h) Such other and further relief as the Court deems just and proper

Respectfully Submitted,

S /Jessica V. Jackson
_____
Law Office of Jessica Jackson-Barrows
Jessica Jackson
Registration Number 39936
3570 E. 12th Avenue, Suite 206
Denver, CO  80206
Phone:  720-458-4241
Fax:  720-532-1766

Attorney for the Plaintiff